1   Robert J. Nelson (State Bar No. 132797)
    rnelson@lchb.com
2   Roger N. Heller (State Bar No. 215348)
    rheller@lchb.com
3   LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
    275 Battery Street, 29th Floor
4   San Francisco, CA  94111-3339
    Telephone:  415.956.1000
5   Facsimile:  415.956.1008

6   Taras Kick (State Bar No.143379)
    taras@kicklawfirm.com
7   THE KICK LAW FIRM, APC
    815 Moraga Drive
8   Los Angeles, CA 90049
    Telephone: 310.395.2988
9   Facsimile: 310.395.2088

10  Jeffrey K. Riffer (State Bar No. 87016)
    jriffer@elkinskalt.com
11  Julie Z. Kimball (State Bar No. 252449)
    jkimball@elkinskalt.com
12  ELKINS KALT WEINTRAUB REUBEN
    GARTSIDE LLP
13  2049 Century Park East, Suite 2700
    Los Angeles, California 90067-3202
14  Telephone: 310.746.4400
    Facsimile: 310.746.4499

15
    Attorneys for Plaintiff Christopher M. Laver
16

17              UNITED STATES DISTRICT COURT

18            NORTHERN DISTRICT OF CALIFORNIA

19

20  CHRISTOPHER M. LAVER, on behalf of          Case No.  3:18-cv-828
    himself and others similarly situated,
21                                              **CLASS ACTION COMPLAINT**
                            Plaintiff,
22                                              **DEMAND FOR JURY TRIAL**
    v.
23                                              **CLASS ACTION**
    CREDIT SUISSE SECURITIES (USA),
24  LLC, a Delaware limited liability company,

25                          Defendant.

26

27

28

Plaintiff Christopher M. Laver ("Plaintiff"), on behalf of himself and the proposed Class defined herein, hereby alleges against Defendant Credit Suisse Securities (USA), LLC ("Credit Suisse") as follows:

**<u>INTRODUCTION</u>**

1.      This class action lawsuit concerns Credit Suisse's refusal to pay many millions of dollars in owed "deferred compensation" to its financial adviser employees following Credit Suisse's decision to shutter its financial advisory operations in late 2015.

2.      For many years, Credit Suisse provided financial advisory services to clients throughout the United States, providing these services through a team of financial advisers in Credit Suisse's "Private Banking Division."

3.      The compensation that Credit Suisse agreed to pay the advisers consisted of multiple components.  One of the primary components was "deferred compensation," whereby a significant portion of the advisers' compensation for a given year is paid on a deferred basis in subsequent years pursuant to the terms of Credit Suisse's form contracts.  Under the contracts, the deferred compensation vests and is paid under a specified schedule, and is necessarily owed by Credit Suisse to the adviser except under limited, specified circumstances that are set forth in the contract—specifically, if the adviser voluntarily "resigns" from Credit Suisse or the adviser is terminated by Credit Suisse for cause, neither of which occurred here.

4.      In October 2015, Credit Suisse announced that it was completely shuttering its financial advisory operations effective within a few months, leaving hundreds of Credit Suisse financial advisers out of a job.  Even though Credit Suisse's advisory operations ceased operating altogether leaving advisors with no choice but to find new jobs, and even though Credit Suisse made clear to the advisers that they needed to find new jobs, when Plaintiff and other advisers joined new firms following the closure announcement (so they could continue their careers, continue to service their clients, and could have income to support their families and themselves), Credit Suisse took the erroneous position that the advisors  voluntarily "resigned" from Credit Suisse and their remaining deferred compensation was thus forfeited under the contract.  The lone exception that Credit Suisse made to this policy was if an adviser was hired by Wells Fargo, with

whom Credit Suisse had entered into a "recruiting agreement," in which case they were permitted to retain some of their deferred compensation entitlements. Otherwise, all outstanding earned deferred compensation was cancelled and denied entirely by Credit Suisse. Through this "resignation" façade, Credit Suisse is reported to have improperly retained as much as $300 million in deferred compensation owed to the advisers.

5.      Credit Suisse reaped the benefits of Plaintiff's and the Class' work over many years, including through substantial revenues Credit Suisse generated through their work. The deferred compensation at issue here was earned and is owed. Credit Suisse should not be able to avoid its obligation to compensate the advisers fully and fairly by claiming they "resigned" when, in fact, Credit Suisse simply ceased operating this business. Nor should Plaintiff and the Class be deprived of their earned deferred compensation because of Credit Suisse's unilateral business decision to exit the market and eliminate their jobs.

6.      Plaintiff brings this action, on behalf of himself and the proposed Class (defined herein), for damages, restitution, disgorgement, specific performance, and other appropriate equitable and injunctive relief.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5,000,000, exclusive of interest and costs; some members of the proposed Class are citizens of different states than Defendant; and there are at least 100 persons in the proposed Class.

8.      This Court has personal jurisdiction over Credit Suisse because Credit Suisse has conducted business in the State of California, and because it has committed acts and omissions complained of herein in the State of California.

9.      Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391 because Plaintiff is a resident of this District and a substantial portion of the acts or omissions giving rise to the claims herein occurred in this District.

CLASS ACTION COMPLAINT
CASE NO. _____

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRADISTRICT ASSIGNMENT**

10.    Assignment to the San Francisco/Oakland Division is appropriate under Civil Local Rule 3-2 because Plaintiff resides in San Mateo County and a substantial portion of the acts or omissions giving rise to the claims herein occurred in San Francisco County and/or San Mateo County.

**PARTIES**

11.    Plaintiff Christopher M. Laver is an individual.  He is a citizen of California, and a resident of San Mateo County, California.

12.    Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") is a Delaware limited liability company with its principal place of business in New York, New York.  Credit Suisse maintains offices throughout the United States, including an office in San Francisco, California, where Plaintiff worked.

**COMMON FACTUAL ALLEGATIONS**

A.    **Credit Suisse's Employment Contract and Deferred Compensation**

13.    At all relevant times, Credit Suisse has utilized form employment contracts that govern its employment of financial advisers, including regarding the compensation the advisers will receive.  Credit Suisse's form contracts, including Plaintiff's contract with Credit Suisse, provide that the parties' rights and obligations are governed by laws of the State of New York.

14.    For Plaintiff and the Class, their contracts with Credit Suisse provide that their compensation will consist of multiple components.  One of the primary components is "deferred compensation," whereby a significant portion of the advisers' compensation for a given year is paid on a deferred basis in subsequent years.  That is, a significant portion of the income that an adviser has already earned is paid out at a future date pursuant to a "vesting" schedule set forth in the contract.  Plaintiff's and the Class' contracts with Credit Suisse all contained these deferred compensation provisions.

15.    The deferred compensation generally or always takes the form of "awards" of stock of Credit Suisse Group AG ("CSG").  Under this structure, when this compensation is earned, the adviser is issued an "award" corresponding to particular amounts of CSG stock

CLASS ACTION COMPLAINT
CASE NO. _____

1    consistent with the contract.  Credit Suisse's Form X-17A-5 indicates that, at the time such an

2    "award" is issued to the adviser, Credit Suisse purchases the corresponding shares of CSG stock,

3    and then holds those shares until they are delivered to the adviser in future years, pursuant to the

4    vesting schedule specified by the contract.

5         16.    Terms and conditions of these "awards" are set forth in a form master share plan

6    (e.g., the Credit Suisse Group AG Master Share Plan) and a form "certificate" document issued

7    pursuant to the master share plan (e.g., the PBWM Performance Share Awards Certificate).  The

8    master share plan and certificate are collectively referred to herein as a "Share Plan."

9         17.    Under their contracts and the Share Plans, when Plaintiff and the Class were issued

10   deferred compensation "awards," they were necessarily entitled to receive this deferred

11   compensation pursuant to the specified vesting schedule, except in limited, specified

12   circumstances set forth in the Share Plans.  Specifically, the Share Plans provide that unvested

13   deferred compensation awards are cancelled if the adviser: (a) voluntarily resigns from Credit

14   Suisse; or (b) is terminated by Credit Suisse for cause.  Neither of these circumstances applies

15   here.

16        18.    In the absence of one of the two scenarios that trigger cancellation of unvested

17   deferred compensation awards (i.e., voluntary resignation or termination for cause), this deferred

18   compensation remains owed.

19        19.    If an adviser is terminated by Credit Suisse without cause, the Share Plans  provide

20   that the adviser's unvested deferred compensation awards vest, and are paid, immediately (i.e., on

21   an accelerated basis).

22        20.    In the event there is a "Change in Control" (e.g., a corporate acquisition), the

23   Share Plans provide that the advisers retain their unvested deferred compensation entitlements.

24        **B.    Credit Suisse Shutters Its Financial Advisory Operations**

25        21.    On or around October 20, 2015, Credit Suisse publicly announced that it was

26   completely shutting down its Private Banking Division (i.e., its financial advisory operations)

27   effective within a few months.  At that time, Credit Suisse made it clear to the hundreds of

28   financial advisers working there (including Plaintiff) that they had to find new jobs — or become

1    unemployed.  There was no option for advisers to remain employed at Credit Suisse as it was

2    closing that business entirely.

3         22.    Following the October 2015 closure announcement, Credit Suisse's Private

4    Banking Division promptly winded down operations.  The advisers were immediately precluded

5    from that point forward from taking on any new clients unless they obtained an "exception" from

6    their branch manager.  Moreover, the "back office" staff which was needed to service existing

7    clients (including administrative support, research and compliance staff) began departing

8    immediately and was completely gone within weeks, rendering the Private Banking Division non-

9    operational and non-functional for all practical purposes, and precluding advisers from continuing

10   to service their clients.  A "final office meeting" was held in the New York office on or around

11   November 13, 2015 to "celebrate the good times and good friendships, and forget about this

12   miserable ending!!!"  By early 2016, the lights went out completely.

13        23.    At the time Credit Suisse announced it was shutting down its financial advisory

14   operations, it also announced that it had entered into a "recruiting agreement" with Wells Fargo

15   Advisors ("Wells Fargo"), whereby Wells Fargo could "recruit" Credit Suisse advisers but was

16   not required to hire them or even to give them an offer.  On information and belief, Credit Suisse

17   entered into this "recruiting agreement" with Wells Fargo, rather than sell its Private Banking

18   Division to Wells Fargo or another company, in a deliberate effort to avoid triggering the

19   "Change in Control" provision in the Share Plans and to try to avoid paying many millions of

20   dollars in owed deferred compensation.  Wells Fargo was incapable of and/or ill-suited to handle

21   certain significant portions of Credit Suisse advisers' business, and Wells Fargo maintained a

22   different type of client base than Credit Suisse advisers.  For this reason and others, Wells Fargo

23   was an unsuitable destination for many advisers.  At the time it entered into the "recruiting

24   agreement" with Wells Fargo, Credit Suisse knew and expected that many of the Credit Suisse

25   financial advisers would not and/or could not work for Wells Fargo.

26

27

28

CLASS ACTION COMPLAINT
                                                                  CASE NO. _____

C.    **Credit Suisse Refuses to Pay Deferred Compensation Based On the False Premise That Advisers "Resigned."**

24.    After Credit Suisse announced that it was shuttering its financial advisory operations and thereby eliminating their positions, Plaintiff and the Class were forced to find other jobs.  For all of them, Credit Suisse cancelled all of their outstanding deferred compensation awards, in violation of its contractual obligation to pay this compensation.  Credit Suisse refuses to pay this earned compensation to Plaintiff and the Class, taking the erroneous and bad faith position that Plaintiff and the Class forfeited their rights to this compensation because they voluntarily "resigned" from Credit Suisse, when in fact Credit Suisse ceased operating its financial advisory business altogether.

25.    The only Credit Suisse financial advisers who were permitted to retain any of their deferred compensation entitlements following the closure announcement were those who were hired by Wells Fargo.  Otherwise, all remaining earned deferred compensation was denied entirely.  This differential treatment of Plaintiff and the Class vis-à-vis the advisers who were hired by Wells Fargo[1] is arbitrary and has no basis in (and indeed violates) Credit Suisse's contracts with Plaintiff and the Class.  It is reported that, by its conduct alleged herein, Credit Suisse has improperly retained as much as $300 million in deferred compensation owed to the advisers.

## PLAINTIFF ALLEGATIONS

26.    Plaintiff Christopher Laver was employed by Credit Suisse as a financial adviser in the Private Banking Division for approximately 13 years, until Credit Suisse announced it was shuttering its financial advisory operations in 2015, thereby eliminating his position at Credit Suisse.

27.    Mr. Laver's contract with Credit Suisse provided that a significant portion of his earned compensation would be via deferred compensation, pursuant to one or more Share Plans. As of October 2015, Mr. Laver had significant deferred compensation awards that had been

---

[1] The Credit Suisse advisers who were hired by Wells Fargo are not included in the proposed Class.

CLASS ACTION COMPLAINT
CASE NO. _____

1   earned and issued by Credit Suisse but had not yet vested.  Credit Suisse was contractually

2   obligated to pay him this compensation.

3       28.     When Credit Suisse announced in or around October 2015 that it was shuttering its

4   financial advisory operations thus eliminating his position with Credit Suisse, Mr. Laver had to

5   find a new job in order to continue his career, continue to service his clients, and continue to earn

6   income to support himself and his family.  In November 2015, Mr. Laver accepted a job as a

7   financial adviser with UBS Securities.  Even though Credit Suisse ceased operating its financial

8   advisory business and forced Mr. Laver to work elsewhere, Credit Suisse cancelled, and refused

9   to honor, Mr. Laver's outstanding earned deferred compensation awards, taking the position that

10  Mr. Laver had forfeited those awards because he supposed voluntarily "resigned" from Credit

11  Suisse, when in fact that was not the case.

12                          **CLASS ACTION ALLEGATIONS**

13      29.     Plaintiff brings this action on behalf of himself and a proposed "Class" of similarly

14  situated persons, defined as follows:

15          All United States-based Credit Suisse financial advisers whose
16          employment relationship with Credit Suisse terminated between
            October 20, 2015 and March 31, 2016 and who at the time their
17          employment with Credit Suisse terminated had unvested Credit
            Suisse deferred compensation awards pursuant to one or more
18          Share Plan.  The Class excludes those financial advisers who were
            hired by Wells Fargo during that time period.

19      30.     <u>Numerosity</u>:  The Class is so numerous that joinder of all members is

20  impracticable.  On information and belief, there are hundreds of persons in the proposed Class.

21  The number and identities of such persons are identifiable and ascertainable based upon available

22  information, including Credit Suisse's records.

23      31.     <u>Commonality and Predominance</u>:  This case raises multiple common questions of

24  law and fact, the answers to which will drive the resolution of this case, including but not limited

25  to:

26          a.     Whether Credit Suisse entered into employment agreements with Plaintiff

27  and the Class that provide for payment, in part, via deferred compensation;

28

CLASS ACTION COMPLAINT
CASE NO. _____

b.       Whether Credit Suisse announced in October 2015 that it was shutting down its Private Banking Division;

c.       Whether Credit Suisse's employment agreements with Plaintiff and the Class obligated Credit Suisse to pay outstanding unvested deferred compensation awards in the event that Credit Suisse ceased operating its financial advisory business and Plaintiff's and the Class' positions with Credit Suisse were eliminated.

d.       Whether Plaintiff and the Class were constructively and/or actually terminated without cause by Credit Suisse;

e.       Whether Credit Suisse breached its contracts with Plaintiff and the Class by cancelling and failing to pay them their outstanding unvested deferred compensation awards;

f.       Whether Credit Suisse acted in a bad faith, arbitrary, and/or unreasonable manner;

g.       Whether Credit Suisse acted in a manner that had the purpose and/or the effect of denying Plaintiff and the Class the full fruits of their bargains with Credit Suisse;

h.       Whether Plaintiff and the Class suffered damages;

i.       Whether Credit Suisse was unjustly enriched by its conduct; and

j.       Whether Plaintiff and the Class are entitled to restitution.

Common issues of law and fact will predominate over any individual issues affecting Class members.

32.       Typicality:  Plaintiff's claims are typical of the claims of the Class.  Plaintiff and all members of the proposed Class were subject to the same alleged wrongful conduct by Credit Suisse and all of them were denied payment of deferred compensation awards that they had earned.  Plaintiff is advancing the same claims and legal theories on behalf of himself and the Class, and has the same interest in obtaining relief.  Plaintiff's interests are directly aligned with those of the Class.

33.       Adequacy of Class Representative:  Plaintiff has no interests that are adverse to, or which conflict with, the interests of the Class, and he is able to, and will, fairly and adequately represent and protect the interests of the Class.  Moreover, Plaintiff has retained counsel

CLASS ACTION COMPLAINT
CASE NO. _____

1    competent and highly experienced in complex class action litigation, and they intend to prosecute

2    this action vigorously.  The interests of the Class will be fairly and adequately protected by

3    Plaintiff and his counsel.

4         34.    Superiority:  A class action is superior to all other available means for the fair and

5    efficient adjudication of the claims of Plaintiff and members of the Class.  Joinder or individual

6    litigation of the claims of all Class members is impracticable.  Even if every member of the Class

7    could afford to pursue an individual remedy, the court system could not.  Individualized litigation

8    presents a potential for inconsistent or contradictory judgments.  Individualized litigation

9    increases the delay and expense to all parties, and to the court system.  By contrast, the class

10   action device presents far fewer management difficulties, and provides the benefits of single

11   adjudication, an economy of scale, and comprehensive supervision by a single court.  Plaintiff

12   knows of no difficulty to be encountered in the management of this action that would preclude its

13   maintenance as a class action.

14        35.    Proper Notice to the Class is Reasonably Feasible:  Members of the Class can be

15   readily identified and notified based on available information, including Credit Suisse's records.

16        36.    Credit Suisse has acted, and failed and refused to act, on grounds generally

17   applicable to the Class, thereby making appropriate final equitable relief with respect to the Class

18   as a whole.

19        37.    Plaintiff reserves the right to amend or modify the above Class definition and class

20   period or make divisions into subclasses or further limitations to particular issues as appropriate

21   and/or warranted as additional facts become known to Plaintiff during discovery or future

22   investigations prior to final judgment.

23                           **CLAIMS FOR RELIEF**

24                        **FIRST CAUSE OF ACTION**
                          **BREACH OF CONTRACT**
25                          **(On Behalf of the Class)**

26        38.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 37 of this

27   Complaint above, as though set forth fully herein.

28

CLASS ACTION COMPLAINT
CASE NO. _____

39.     Plaintiff and the Class entered into agreements with Credit Suisse that were valid and enforceable contracts and that entitled Plaintiff and the Class to certain compensation, including deferred compensation.

40.     Plaintiff and the Class performed all conditions, covenants, and promises required to be performed by them pursuant to the terms of their contracts with Credit Suisse, except for those that have been excused.

41.     There is a strong public policy requiring employers to pay wages or other compensation to their employees.  There is also a long-standing policy against the forfeiture of earned wages which includes bonuses, commissions and deferred compensation.

42.     Credit Suisse breached its contracts with Plaintiff and the Class by cancelling their deferred compensation awards and failing to pay them deferred compensation that they earned and were contractually entitled to, based on the false premise that Plaintiff and the Class voluntarily "resigned" from Credit Suisse, which was not the case.  None of the limited events that would trigger cancellation of these deferred compensation entitlements, under Plaintiff's and the Class' contracts with Credit Suisse, occurred, and thus Credit Suisse was contractually obligated to pay and honor these entitlements.

43.     As a direct and proximate result of Credit Suisse's breach of its contractual obligations to Plaintiff and the Class, Plaintiff and the Class have been damaged in an amount to be determined at trial.

44.     Plaintiff and the Class were constructively and/or actually terminated by Credit Suisse without cause and as such are contractually entitled to immediate vesting and payment by Credit Suisse of their outstanding deferred compensation awards as of October 20, 2015. Plaintiff, on behalf of himself and the Class, requests that the Court order specific performance by Credit Suisse of this contractual obligation and right.

45.     Even if Credit Suisse's closure of its financial advisory operation and elimination of Plaintiff's and the Class' positions with Credit Suisse did not qualify as a termination without cause (thus triggering its obligation to make immediate, accelerated payment of Plaintiff's and the Class' remaining unpaid deferred compensation), Credit Suisse still breached its obligations to

1    Plaintiff and the Class by cancelling these entitlements instead of honoring and paying them

2    pursuant to the contractual vesting schedules, because none of the limited events that would

3    trigger cancellation of these deferred compensation entitlements, under Plaintiff's and the Class'

4    contracts with Credit Suisse, occurred.  Thus, in the alternative to specific performance, Plaintiff

5    requests that the Court award damages to Plaintiff and the Class for Credit Suisse's breaches.

6                             **SECOND CAUSE OF ACTION**
       **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
7                             **(On Behalf of the Class)**

8         46.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 37 of this

9    Complaint above, as though set forth fully herein.

10        47.    Plaintiff and the Class entered into agreements with Credit Suisse that were valid

11   and enforceable contracts and that entitled Plaintiff and the Class to certain compensation,

12   including deferred compensation.

13        48.    Plaintiff and the Class performed all conditions, covenants, and promises required

14   to be performed by them pursuant to the terms of their contracts with Credit Suisse, except for

15   those that have been excused.

16        49.    Implied in every contract, including in Plaintiff's and the Class' contracts with

17   Credit Suisse, is a covenant of good faith and fair dealing.  By its conduct alleged herein, Credit

18   Suisse breached the implied covenant of good faith and fair dealing by acting in a bad faith,

19   arbitrary and unreasonable manner, and in a manner that had the purpose and effect of interfering

20   with Plaintiff's and the Class' rights to receive the full fruits and benefits of their contracts.

21        50.    Credit Suisse conduct in breached the implied covenant of good faith and fair

22   dealing has included:  (a) announcing that it was shuttering its financial advisory operations and

23   then cancelling and refusing to pay Plaintiff's and the Class' earned deferred compensation based

24   on the false premise that they "resigned" from Credit Suisse when in fact Credit Suisse ceased

25   operating its financial advisory business thus eliminating their jobs; (b) deliberately structuring

26   both the closure of its financial advisory operations and its "recruiting agreement" with Wells

27   Fargo to try to avoid paying hundreds of advisers their remaining earned deferred compensation;

28

CLASS ACTION COMPLAINT
                                                                          CASE NO. _____

1   and (c) arbitrarily cancelling the earned deferred compensation awards of Plaintiffs and the Class

2   while not doing so, or not doing so entirely, for advisers hired by Wells Fargo.

3       51.     To the extent Credit Suisse's contracts with Plaintiff and the Class provided Credit

4   Suisse with discretion regarding these issues, Credit Suisse exercised such discretion in bad faith

5   and in a grossly unreasonable manner through its conduct alleged here.

6       52.     As a direct and proximate result of Credit Suisse's breach of the implied covenant

7   of good faith and fair dealing, Plaintiff and the Class were damaged in an amount to be

8   determined at trial.

9                           **THIRD CAUSE OF ACTION**
                            **QUANTUM MERUIT**
10                          **(On Behalf of the Class)**

11      53.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 37 of this

12  Complaint above, as though set forth fully herein.

13      54.     Plaintiff asserts this cause of action as an alternative to the causes of action

14  sounding in contract set forth above.

15      55.     Plaintiff and the Class performed services in good faith as employees of Credit

16  Suisse.

17      56.     Credit Suisse accepted the employment services provided by Plaintiff and the

18  Class, and reaped the benefits of those services, including but not limited to through revenue

19  generated by Plaintiff's and the Class' services.

20      57.     Plaintiff and the Class reasonably expected compensation in return for the services

21  they rendered for Credit Suisse and in return for the benefits they conferred upon Credit Suisse.

22      58.     The reasonable value of the services provided by Plaintiff and the Class is equal to

23  all of the compensation set forth in Plaintiff's and the Class' employment agreements with Credit

24  Suisse.  Of that amount, certain earned deferred compensation is unpaid as set forth herein.

25      59.     Credit Suisse has been unjustly enriched by Plaintiff's and the Class' services to

26  the extent Credit Suisse has failed to compensate them for those services.

27      60.     Equity requires that Credit Suisse disgorge the value of the benefit of Plaintiff's

28  and the Class's services that Credit Suisse is unjustly retaining.

CLASS ACTION COMPLAINT
CASE NO. _____

**FOURTH CAUSE OF ACTION**
**CONVERSION**
**(On Behalf of the Class)**

61.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 37 of this Complaint above, as though set forth fully herein.

62.     By its conduct alleged herein, Credit Suisse has wrongfully converted the property of Plaintiff and the Class that they had the right to—i.e., their earned but unpaid deferred compensation—and Credit Suisse is liable to Plaintiff and the Class in the amount of the value of that property at the time of conversion.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF NEW YORK LABOR LAW**
**(On Behalf of the Class)**

63.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 37 of this Complaint above, as though set forth fully herein.

64.     At all relevant times, Credit Suisse was an "employer" as defined in New York labor laws, and Plaintiff and the Class were "employees" within the meaning of New York labor laws.  N.Y. Labor Law §190.

65.     At all relevant times, Plaintiff and the Class were "commission salesmen" within the meaning of New York Labor Law § 190(6)

66.     Pursuant to New York Labor Law § 191(1)(c): "A commission salesperson shall be paid the wages, salary, drawing account, commissions and all other monies earned or payable in accordance with the agreed terms of employment, but not less frequently than once in each month and not later than the last day of the month following the month in which they are earned; provided, however, that if monthly or more frequent payment of wages, salary, drawing accounts or commissions are substantial, then additional compensation earned, including but not limited to extra or incentive earnings, bonuses and special payments, may be paid less frequently than once in each month, but in no event later than the time provided in the employment agreement or compensation plan."

CLASS ACTION COMPLAINT
CASE NO. _____

67.     By its conduct alleged herein, Credit Suisse has failed to pay Plaintiff and the Class as required under New York Labor Law § 191(1)(c), causing Plaintiff and the Class damages.

**SIXTH CAUSE OF ACTION**
**DECLARATORY RELIEF**
**(On Behalf of the Class)**

68.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 37 of this Complaint above, as though set forth fully herein.

69.     An actual substantial controversy now exists between Plaintiff and Credit Suisse. Among other things, Plaintiff and Credit Suisse dispute: (a) whether Credit Suisse constructively and/or actually terminated Plaintiff and the Class without cause when it closed its financial advisory operations and eliminated their jobs; and (b) whether in all events (i.e. regardless of what the answer is to the prior issue), Plaintiff and the Class are entitled to receive their remaining unpaid deferred compensation following the termination of their employment with Credit Suisse.  These disputes are definite and concrete and involve the legal relations of parties having adverse legal interests, rendering declaratory relief appropriate.

70.     Plaintiff, on behalf of himself and the Class, desires a judicial determination of the respective rights and obligations of Plaintiff and the Class and Credit Suisse under the parties' agreements.  A declaratory judgment is appropriate and in the interests of justice.

71.     Specifically, Plaintiff, on behalf of himself and the Class, seeks a declaration that: (a) Credit Suisse constructively and/or actually terminated Plaintiff and the Class without cause when it closed its financial advisory operations and eliminated their jobs; and (b) in all events (i.e., regardless of what the answer is to (a) above), Plaintiff and the Class are entitled to receive their remaining unpaid deferred compensation following the termination of their employment with Credit Suisse.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all other members of the proposed Class, respectfully request that this Court:

- 14 -

1    1.    Determine that the claims alleged herein may be maintained as a class action under

2    Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the proposed Class;

3    2.    Designate and appoint Plaintiff as Class Representative;

4    3.    Appoint Plaintiff's attorneys of record as Class Counsel;

5    4.    Enter judgment against Credit Suisse and in favor of Plaintiff and the Class for the

6    asserted causes of action;

7    5.    Order specific performance by Credit Suisse of its contractual obligations to

8    Plaintiff and the Class;

9    6.    Award damages and restitution to Plaintiff and the Class according to proof;

10    7.    Order Credit Suisse to disgorge all amounts that it has improperly received and

11    retained through its misconduct alleged herein;

12    8.    Grant appropriate injunctive and declaratory relief;

13    9.    Award pre-judgment and post-judgment interest;

14    10.    Award Plaintiff reasonable attorneys' fees and costs; and

15    11.    Grant such further relief as the Court deems appropriate.

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT
CASE NO. _____

1    Dated: February 7, 2018                Respectfully submitted,

2                                           LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

3

4                                           By: _/s/ Robert J. Nelson_____

5                                           Robert J. Nelson (State Bar No. 132797)
                                            rnelson@lchb.com
6                                           Roger N. Heller (State Bar No. 215348)
                                            rheller@lchb.com
7                                           275 Battery Street, 29th Floor
                                            San Francisco, CA  94111-3339
8                                           Telephone:  415.956.1000
                                            Facsimile:  415.956.1008
9
                                            Taras Kick (State Bar No.143379)
10                                          taras@kicklawfirm.com
                                            THE KICK LAW FIRM, APC
11                                          815 Moraga Drive
                                            Los Angeles, CA 90049
12                                          Telephone: 310.395.2988
                                            Facsimile: 310.395.2088
13
                                            Jeffrey K. Riffer (State Bar No. 87016)
14                                          jriffer@elkinskalt.com
                                            Julie Z. Kimball (State Bar No. 252449)
15                                          jkimball@elkinskalt.com
                                            ELKINS KALT WEINTRAUB REUBEN
16                                          GARTSIDE LLP
                                            2049 Century Park East, Suite 2700
17                                          Los Angeles, California 90067-3202
                                            Telephone: 310.746.4400
18                                          Facsimile: 310.746.4499

19                                          Attorneys for Plaintiff Christopher M. Laver

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT
                                                                                                                CASE NO. _____

1

## DEMAND FOR JURY TRIAL

2      Plaintiff hereby demands trial by jury pursuant to Rule 38(b) of the Federal Rules of Civil

3    Procedure and Local Rule 3-6.

4

5    Dated: February 7, 2018                    Respectfully submitted,

6                                               LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

7

8                                               By:  */s/ Robert J. Nelson*
                                                     Robert J. Nelson
9                                                    Attorneys for Plaintiff

10

11
     1503653.2
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                      - 17 -