UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER M. LAVER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CREDIT SUISSE SECURITIES (USA), LLC,<br><br>　　　　Defendant. | Case No. 18-cv-00828-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS; DENYING MOTION TO TRANSFER AS MOOT**<br><br>Re: Dkt. Nos. 17, 19 |

Defendant Credit Suisse Securities, USA ("CSSU") moves to dismiss this case, arguing that plaintiff Christopher M. Laver ("Laver") is bound by the parties' Employee Dispute Resolution Program ("EDRP") and the related agreement to arbitrate the claims he asserts in this putative class action. Dkt. No. 17. In the alternative, CSSU moves to transfer venue to the Southern District of New York ("SDNY"), where a petition to compel arbitration of Laver's claims is pending. Dkt. No. 19. Because I find that Laver is bound by his agreement to the EDRP and the attendant arbitration provision, and reject Laver's argument that the EDRP's class action waiver is nullified by Financial Industry Regulatory Authority ("FINRA") Rule 13204, I grant the motion to dismiss and deny the motion to transfer as moot.

## BACKGROUND

### I. FACTUAL BACKGROUND

#### A. Plaintiff's Factual Allegations

Laver is a former employee of CSSU who worked for 13 years as a financial adviser in CSSU's "Private Banking Division" in San Francisco. Compl. ¶ 2 & Declaration of Christopher M. Laver (Dkt. No. 24) ¶ 3. CSSU is a Delaware limited liability company whose business headquarters is located in New York City, New York. Compl. ¶ 12.

CSSU's employment of financial advisers, including Laver and members of his proposed class, was governed by form contracts providing that the advisers' rights and obligations were governed by laws of the State of New York. *Id*. ¶ 13. A primary component of Laver's and the

other financial advisers' compensation from CSSU was in the form of "deferred compensation," whereby a "significant portion" of income for a given year is paid on a deferred basis in subsequent years. *Id.* ¶ 14. Deferred compensation generally took the form of "awards" of stock of Credit Suisse Group AG ("CSG"). *Id.* ¶ 15.

The awards' terms and conditions are set forth in (i) the Credit Suisse Group AG Master Share Plan ("MSP") (Compl. ¶ 16) and (ii) a "certificate" issued pursuant to the MSP. *Id.* ¶ 16. Pursuant to the MSP, CSSU owes a financial adviser deferred compensation unless that adviser voluntarily resigns from CSSU or is terminated by CSSU for cause. *Id.* ¶ 17. A change in control (*e.g.*, a corporate acquisition) triggers the MSP's "Change in Control" provisions, which allow financial advisers to retain their unvested deferred compensation entitlements. *Id.* ¶¶ 20, 23.

On or around October 20, 2015, CSSU publicly announced that it had entered into a "recruiting agreement" with Wells Fargo and would be completely shutting down its Private Banking Division (*i.e.*, its financial advisory operations). *Id.* ¶¶ 21, 23. While Wells Fargo could recruit CSSU advisers pursuant to the recruiting agreement, it was not required to give any employment offers. *Id.* ¶ 23. CSSU made clear to its financial advisers that they had to either find new jobs or become unemployed. *Id.* ¶ 21. Laver believes that CSSU entered into this agreement with Wells Fargo knowing that Wells Fargo would be an unsuitable destination for many of its advisers, and that it did so in a deliberate attempt to avoid triggering the "Change in Control" provisions in the MSP, which would require it to pay many millions of dollars of deferred compensation. *Id.* ¶ 23.

Within weeks of CSSU's announcement, the Private Banking Division was rendered non-operational and non-functional for all practical purposes, forcing Laver and the class to find other jobs. *Id.* ¶ 24. In November 2015, Laver accepted a job as a financial adviser with UBS Securities. *Id.* ¶ 28. CSSU then cancelled and refused to honor Laver's outstanding earned deferred compensation awards, taking the position that he had forfeited those awards because he voluntarily "resigned" from CSSU. *Id.* CSSU ultimately gave deferred compensation only to the financial advisers who were hired by Wells Fargo. *Id.* ¶ 25.

### B. Credit Suisse's Factual Allegations[1]

#### 1. Annual Certifications and Agreement to CSSU's ERDP

In 2004, CSSU implemented an annual certification process during which employees were asked to execute CSSU certifications confirming that they have reviewed or are familiar with, among other things, CSSU's Code of Conduct and EDRP. Declaration of Cathleen M. Tocknell ISO MTD (Dkt. No. 17-1) ¶ 8. From 2004 until his departure, Laver executed annual Credit Suisse certifications. Tocknell Decl. ISO MTD ¶ 11. He last signed an employment certification statement on January 27, 2015. Tocknell Decl. ISO MTD ¶ 12 & Ex. E at 20.

The employment certification statement signed by Laver provided:

> I have reviewed and am familiar with Credit Suisse's employment-related rules and policies applicable to my location and division and I understand and agree to abide by them. These include, without limitation, all rules and policies relating to equal employment opportunities and prohibiting discriminatory practices, <u>and the provisions of any applicable employment dispute resolution program</u> and/or applicable rules or requirements relating to notice of resignation, non-competition and/or non-solicitation (to see Credit Suisse's human resources rules and requirements applicable to you, go to <u>MyHR</u>[2] and/or refer to your employment agreement or other applicable documentation).

Tocknell Decl. ISO MTD ¶ 13 (emphasis added).

##### a. Terms of CSSU EDRP

Because Laver's last certification was in January 2015, Laver agreed to the 2011 version of the EDRP. Cathleen M. Tocknell ISO Mot. to Transfer Venue (Dkt. No. 27-1) ¶¶ 4, 5. The EDRP provided:

> An employee may not assert Employment-Related Claims in or as part of a class or collective action, or accept any money damages or other relief awarded to class members in such an action on account of any Employment-Related Claim, unless such action is prosecuted in accordance with the provisions of the program. Further, a mediator or arbitrator appointed pursuant to the program may not

---

[1] CSSU disputes the factual allegations included in Laver's Complaint, including the facts surrounding what it contends was the "transfer" of its brokerage business to Wells Fargo. Reply in Supp. of MTD 7-8; Reply in Supp. of Mot. to Transfer 5-7. Those facts are irrelevant in determining CSSU's motions to dismiss and transfer, and are not appropriately considered at this juncture. However, facts pleaded in support of CSSU's motion to dismiss based on the arbitration agreement and its motion to transfer *are* appropriately considered.

[2] In the online certification statement viewed by employees, this is a link to the EDRP.

3

> consolidate Employment-Related Claims of different employees absent the written consent of Credit Suisse and all of the employees involved.
>
> In the interest of prompt and inexpensive resolution of disputes, and to the extent permitted by law, no dispute subject to arbitration under this section shall be consolidated with any other employee's dispute or prosecuted as a class or collective action, except as agreed by all parties. An employee's agreement to abide by the terms of the Program includes an agreement not to serve as a class representative or a class member or act as a private attorney general in any dispute with Credit Suisse.
>
> . . .
>
> Except as agreed by all parties, there shall be no class, collective, or consolidated actions permitted in arbitration. In addition, except as agreed by all parties, the arbitrator shall have no authority to entertain a class or collective action or a private attorney general action or to consolidate one individual's claim with the claims of any other individual. To the extent there is any dispute about the availability of class or collective procedures in arbitration, that issue shall be considered a threshold issue that must be decided by a court of competent jurisdiction.

Tocknell Decl. ISO MTD, Ex. F at 3 & Declaration of Cathleen M. Tocknell ISO Mot. to Transfer Venue, Ex. F at 3 (2011 version); & Declaration of Roger N. Heller ISO MTD and ISO Mot. to Transfer Venue (Dkt. No. 25-3), Ex. C at 47 (2015 version).[3]

The EDRP's dispute resolution program consists of three steps: (1) an internal grievance procedure; (2) mediation with a neutral third party; and (3) final and binding arbitration before a neutral third party. Heller Decl., Ex. C at 47.[4] All mediations under the EDRP are to be conducted by a single mediator supplied by JAMS. *Id*. All arbitrations under the EDRP are to be

---

[3] Laver noted that although CSSU included with its moving papers the 2011 version of the EDRP, the operative version here may be the 2015 version attached as Ex. C to the Heller Decl. Oppo. to Mot. to Transfer Venue 3 n.3. Tocknell, on behalf of CSSU, explained: "The last time Laver completed the annual certification process, wherein he agreed to be bound by the EDRP, was in January of 2015. At that time, the operative EDRP was the 2011 version. The 2015 version of the EDRP was not certified by CSSU employees until January of 2016, after Laver resigned. Consequently, the 2011 version of the EDRP is the operative agreement as it pertains to Mr. Laver." Reply Tocknell Decl. ISO Mot. to Transfer Venue, ¶ 4. According to CSSU, and not disputed by Laver, every member of the proposed class agreed to either the 2011 version or the 2015 version of the EDRP. Significantly, neither Laver nor CSSU point to any material differences between the 2011 and 2015 versions. *Id*. ¶ 5; Oppo. to Mot. to Transfer Venue at 3 ("[t]he result here is the same whether the 2011 or 2015 version applies").
[4] *See also* Tocknell Decl. ISO MTD, Ex. F at 3 & Tocknell Decl. ISO Mot. to Transfer, Ex. F at 3.

4

conducted by a single arbitrator or, upon written consent, a panel of three arbitrators supplied by JAMS or the American Arbitration Association. *Id.*[5] The EDRP also provides that "[a]ny mediation or arbitration [under the EDRP] will be held in the New York City metropolitan area or, at the request of the party initiating the proceeding and with the consent of the other party, in the location of the CSSU office where the employee applied for a position or works or worked when the complained of action or actions took place." *Id.*

The EDRP's terms provide that CSSU employees located in the United States may only use EDRP procedures to seek resolution of claims covered by the EDRP. *Id.* The EDRP specifically covers claims relating to or arising from an employee's termination of employment or events occurring after employment that relate to an employee's termination of employment. *Id.* Those claims include claims for breach of a contract related to the employee's employment and claims asserted under the MSP or any other equity or deferred compensation plan. *Id.* The EDRP also includes a class claim waiver, which provides: (i) "No dispute subject to arbitration under the above categories shall be consolidated with any other employee's dispute or prosecuted as a class or collective action, except as agreed upon by all parties" and (ii) "An employee's agreement to abide by the terms of the EDRP includes an agreement not to serve as a class representative or class member or act as a private attorney general in any dispute with Credit Suisse." *Id.*

## II. PROCEDURAL BACKGROUND

On February 7, 2018, plaintiff filed this class action complaint on behalf of himself and a proposed "Class" comprised of:

> All United States-based Credit Suisse financial advisers whose employment relationship with Credit Suisse terminated between October 20, 2015 and March 31, 2016 and who at the time their employment with Credit Suisse terminated had unvested Credit Suisse deferred compensation awards pursuant to one or more Share Plan.

Compl. ¶ 29. "The Class excludes those financial advisers who were hired by Wells Fargo during

---

[5] In 2016, CSSU revised the EDRP to include FINRA as an additional permissible forum at the arbitration stage of the EDRP. Although FINRA was added as a forum after Laver resigned, CSSU noted that it would be willing to arbitrate in FINRA at stage three of the EDRP if that is Laver's preference. Def.'s Req. for Judicial Notice (Ex. A, Dkt. No. 28-1), n.1.

5

that time period." *Id*. The Complaint alleges the following causes of action on behalf of the class: breach of contract, breach of implied covenant of good faith and fair dealing, quantum meruit, conversion, violation of New York labor law, and declaratory relief.

On March 30, 2018, CSSU filed two motions. CSSU first moves to dismiss or, in the alternative, to stay this case. It argues that under the EDRP Laver's complaint should be dismissed in favor of arbitration pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6), and that he is required to arbitrate his claims regardless of the EDRP. Laver opposes, asserting that: (i) this Court is the proper court to adjudicate CSSU's arbitration claim; (ii) CSSU's attempt to compel arbitration fails on the merits because binding FINRA rules prohibit compelled arbitration of the plaintiff's putative class claims; and (iii) the EDRP's class waiver provision is unenforceable.

In its second motion, CSSU seeks to transfer this case to the SDNY. It contends that: (i) this case could have and should have originally been brought in the SDNY; (ii) the forum selection clause contained in Credit Suisse's EDRP controls venue under 28 U.S.C. section 1404(a); and (iii) even if the forum selection clause is not controlling, the relevant factors under Section 1404(a) favor a transfer. Plaintiff opposes, stating that his choice to file in this District is entitled to deference because the EDRP does not contain a mandatory venue clause and the relevant factors under Section 1404 do not support a transfer regardless.

Four days after filing its motions in the Northern District of California, CSSU filed a petition to compel arbitration against Laver in the SDNY pursuant to the arbitration clause contained in its EDRP. Def.'s Req. for Judicial Notice, Ex. A (Dkt. No. 28-1).[6] Laver appeared in that action, opposed the petition to compel on its merits (raising similar arguments to those raised here), and asked the SDNY court to defer to my determination regarding Credit Suisse's arbitration claim. Def.'s Req. for Judicial Notice, Ex. D (Dkt. No. 28-4).

---

[6] CSSU also filed a Request for Mediation with JAMS, in accordance with the requirements of the EDRP, on March 16, 2018. Declaration of Victoria J. Kehoe ISO MTD (Dkt. No. 17-2), ¶ 2 & Ex. A at 5.

6

**LEGAL STANDARD**

**I.  MOTION TO DISMISS**

CSSU moves to dismiss under Rule 12(b)(1), (b)(3), and (b)(6) on the grounds that Laver's claims are covered by a valid agreement to arbitrate. *See*, *e.g.*, *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004) (affirming dismissal of plaintiffs' claims subject to arbitration provision pursuant to Rule 12(b)(6)); *Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 725 (9th Cir. 2000) (same); *Akar v. Prescott Hotel*, C 07-4531 SI, 2008 WL 2265184, at *1 (N.D. Cal. June 2, 2008) (finding arbitration applicable and granting motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)); *see also Cancer Ctr. Assocs. for Research & Excellence, Inc. v. Philadelphia Ins. Companies*, No. 1:15-cv-00084-LJO, 2015 WL 1766938, at *2 (E.D. Cal. Apr. 17, 2015) ("[C]ourts have held that a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is a procedurally sufficient mechanism to enforce [an] [a]rbitration [p]rovision." (internal quotation marks omitted)).

**II.  MOTION TO TRANSFER**

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.  28 U.S.C. § 1404(a).  District courts have the broad discretion to adjudicate motions to transfer on a case-by-case basis.  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).  Prior to granting a transfer of venue pursuant to 28 U.S.C. § 1404(a), a district court must find "that the transferee court is one where the action might have been brought and that the convenience of parties and witnesses in the interest of justice favor transfer."  *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985) (internal quotation marks omitted).

The factors used in the convenience analysis are:  (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum.  *See*, *e.g.*, *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 776 (N.D. Cal. 2014);

*Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980,993 (N.D. Cal. 2011); *Vu v. Ortho-McNeil Pharm.*, Inc., 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009). "The party seeking transfer has the burden of showing that transfer is appropriate." *Sarinana v. DS Waters of Am., Inc.*, No. C-13-0905 EMC, 2013 U.S. Dist. LEXIS 95649, at *3 (N.D. Cal. July 9, 2013).

## DISCUSSION

### I. MOTION TO DISMISS

CSSU seeks dismissal of this action because Laver agreed to submit any and all employment related disputes to mediation and arbitration under the EDRP and, therefore, this action should be dismissed in light of the enforceable arbitration agreement. Laver opposes, arguing that this Court has the authority to determine CSSU's motion to compel enforcement of the ERDP. He contends that such a motion should have been filed in this case instead of the litigation gymnastics CSSU has employed to assert its arbitration defense. As a result, Laver asks me to (but does not formally move to) stay or enjoin the SDNY action.

On the merits of whether these claims should be dismissed in favor of arbitration, Laver says that the arbitration agreement is unenforceable and CSSU's motion should be denied because: (i) the EDRP to which Laver agreed is trumped by FINRA rules applicable to Laver and the class members; (ii) the FINRA rules prohibit waiver of a collective or class action; and (iii) under the FINRA rules, any required mediation or arbitration should be initiated in this District.

#### A. Authority of this Court – Request to Stay or Enjoin SDNY Action

Laver disputes one of CSSU's central positions—that only the SDNY can compel arbitration—and instead contends not only that I have the authority to rule on the issue of whether arbitration should be compelled, but also that I should stay or enjoin the SDNY action under the first-filed doctrine. Laver has not formally moved by noticed motion to enjoin or stay the SDNY action. Instead, he raises this request in his opposition to CSSU's motion to dismiss. He has, however, appeared in the SDNY action.

Generally, "when two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit and no purpose would be served by proceeding with a second action." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th

8

Cir. 1982); *see also Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 986 (N.D. Cal. 2011) ("When two actions involving nearly identical parties and closely related [ ] questions are filed in separate districts . . . the general rule is that the case first filed takes priority, and the subsequently filed suit should be dismissed or transferred or stayed."). However, "[t]he most basic aspect of the first-to-file rule is that it is discretionary . . . ." *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991). It "is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." *Pacesetter Sys.*, 678 F.2d at 95.

Even if Laver had formally moved to stay or enjoin the SDNY action, a number of factors weigh against staying or enjoining that action. First, the cases are not identical. The issues raised by the claims asserted here by a class under New York law and in the petition to compel arbitration in the SDNY action, and the relief that can be ordered in each court, are fundamentally different.

Second, while Laver contends that under the Federal Arbitration Act, 9 U.S.C. § 4, I have the authority to compel arbitration (if I conclude that a valid and enforceable arbitration agreement exists), CSSU had a good faith reason for filing its motion to compel in the SDNY under Second Circuit authority *and* authority from this District. That authority holds that arbitration may only be compelled in the district where the petition to compel has been filed. *Pet. of Home Ins. Co.*, 908 F. Supp. 180, 182 (S.D.N.Y. 1995); *see also Capelli Enterprises, Inc. v. Fantastic Sams Salons Corp.*, 5:16-CV-03401-EJD, 2017 WL 130284, at *5 (N.D. Cal. Jan. 13, 2017) (Under 9 U.S.C. § 4 "arbitration cannot be compelled to occur somewhere outside this district. . . ."); *Homestake Lead Co. of Missouri v. Doe Run Resources Corp.*, 282 F. Supp. 2d 1131, 1144 (N.D. Cal. 2003) (district court could not compel arbitration in a different district).[7] CSSU cannot

---

[7] Laver's authority supposedly showing that I have authority to grant a petition to compel arbitration in the SDNY is, at best, inapposite to the facts presented here. *See Textile Unlimited, Inc. v. A..BMH and Co., Inc.*, 240 F.3d 781 (9th Cir. 2001) (recognizing that Section 4 generally applies to petitions to compel arbitration but does not govern motions to enjoin arbitration); *Homestake Lead Co. of Missouri v. Doe Run Resources Corp.*, 282 F. Supp. 2d 1131, 1144 (N.D. Cal. 2003) (granting a defendant's petition to compel arbitration in the Northern District of California, even though another venue was specified in the agreement in light of the defendant's agreement to jurisdiction by filing its petition to compel there). CSSU is entitled to preserve its

be criticized for adhering to its EDRP provisions, despite Laver's challenges to the same. *Natl. Union Fire Ins. Co. v. Adv. Micro Devices, Inc.*, 16-CV-5699 (JGK), 2016 WL 4204066, at *4 (S.D.N.Y. Aug. 4, 2016) (". . . inequitable to penalize National Union, as the second filer, for abiding by the arbitration agreement when AMD, the first filer, disregarded its contractual obligation to arbitrate.").

Finally, while Laver argues that FINRA rules trump the EDRP's venue selection clause and govern the location of arbitration (which, according to Laver, should proceed here), Laver *has not affirmatively invoked* a FINRA proceeding under the FINRA rules. His complaint does not mention FINRA; it asserts claims arising under New York law. The relevance or applicability of the FINRA rules governing the location of an invoked FINRA arbitration to these proceedings is questionable.[8]

I will not stay or enjoin the SDNY action to compel arbitration based on the informal request by plaintiff and the record in this case.

### B. Motion to Dismiss Based On Arbitration Agreement

Laver also argues that CSSU's "attempt to compel arbitration of the class claims here must fail because it directly violates FINRA Rules prohibiting the compelled arbitration of putative class claims, and because the class waiver provision in the EDRP provision is unenforceable." Oppo. MTD 12-13. It is significant that Laver *does not challenge* CSSU's position that, given Laver's Annual Certifications and his agreement to the terms of the Share Plan, Laver has agreed to the EDRP. Moreover, Laver does not argue that the EDRP provisions are procedurally or

---

rights to argue in favor of compelled arbitration in the SDNY by filing the petition to compel in that court.

[8] While Laver contends "similar circumstances" were presented in *J.P. Morgan Securities Inc. v. Louisiana Citizens Prop. Ins. Corp.*, 712 F. Supp. 2d 70 (S.D.N.Y. 2010), in that case, the SDNY declined to enjoin proceedings preliminary to a FINRA arbitration at the request of the defendant because there were no grounds on which to find the arbitration agreement did not cover the claims at issue. *Id*. at 80. The district court also confirmed that it did not have authority under § 4 "to compel the arbitration" even in response to the plaintiff's affirmative request, because the FINRA arbitration was "scheduled to occur outside of the Southern District of New York." *Id*. at 82-83. As to Laver's reliance on the fact that some former financial advisers are pursuing individual FINRA arbitrations against CSSU in venues other than New York, CSSU shows that those arbitrations are proceeding under CSSU's amended EDRP, which allows those advisers to select FINRA as an arbitral forum. Def.'s Req. for Judicial Notice, Ex. A (Dkt. No. 28-3), ¶¶ 3-12.

substantively unconscionable under California law (presumably because he admits that New York law applies to his claims). Instead, he argues: (i) the arbitration cannot be compelled for his class claims given FINRA Rule 13204; (ii) the class waiver is unenforceable under FINRA's rules; and (iii) the class waiver is unenforceable under the Ninth Circuit's opinion in *Morris v. Ernst & Young LLP*, 834 F.3d 975 (9th Cir. 2016), cert. granted, 137 S. Ct. 809 (2017).

Laver's third argument has been foreclosed by the Supreme Court's recent decision in *Epic Systems Corp. v. Lewis*, 584 U.S. __ (May 21, 2018). Regarding his other two arguments, I note that CSSU is *not* moving to compel. CSSU is moving to dismiss in favor of the allegedly binding arbitration agreement. Laver does not adequately explain how it is that FINRA rules governing non-arbitrability of class claims apply here when no FINRA proceedings have been invoked. However, assuming the FINRA rules could apply as a defense to a motion to dismiss based on an arbitration agreement, I will consider them.

### 1. FINRA and Compelled Arbitration of Class Claims

FINRA Rule 13204 provides in relevant part:

> 13204. Class Action & Collective Action Claims
> (a) Class Actions
>    (1) Class action claims may not be arbitrated under the Code.
>    (2) Any claim that is based upon the same facts and law, and involves the same defendants as in a court-certified class action or a putative class action, or that is ordered by a court for class-wide arbitration at a forum not sponsored by a selfregulatory organization, shall not be arbitrated under the Code, unless the party bringing the claim files with FINRA one of the following:
>       (i) a copy of a notice filed with the court in which the class action is pending that the party will not participate in the class action or in any recovery that may result from the class action, or has withdrawn from the class according to any conditions set by the court; or
>       (ii) a notice that the party will not participate in the class action or in any recovery that may result from the class action.
>    (3) The Director will refer to a panel any dispute as to whether a claim is part of a class action, unless a party asks the court hearing the class action to resolve the dispute within 10 days of receiving notice that the Director has decided to refer the dispute to a panel.
>    (4) A member or associated person may not enforce any arbitration agreement against a member of a certified or putative class action with respect to any claim that is the

> subject of the certified or putative class action until:
> • The class certification is denied;
> • The class is decertified;
> • The member of the certified or putative class is excluded from the class by the court; or
> • The member of the certified or putative class elects not to participate in the class or withdraws from the class according to conditions set by the court, if any.
>
> . . .
>
> These subparagraphs do not otherwise affect the enforceability of any rights under the Code or any other agreement.

FINAL Rule 13204.

CSSU argues that Rule 13204 was waived and cannot trump the EDRP because Laver voluntarily agreed to the EDRP and its dispute resolution process. It relies heavily on the Second Circuit's decision in *Cohen v. UBS Fin. Services, Inc.*, 799 F.3d 174 (2d Cir. 2015). There, the defendant moved to compel to arbitration the individual claims of a putative class action plaintiff. The district court granted the motion to compel, and the Second Circuit affirmed. The *Cohen* court concluded that Rule 13204 "does not prohibit a pre-dispute waiver of class and collective action procedures, and permits FINRA arbitration of individual wage-and-hour claims." *Id.* at 176. It found that Rule 13204 "says nothing about" and cannot be read to bar enforcement of contractual class action waivers. *Id.* at 178.[9] CSSU also relies on *Credit Suisse Securities (USA) LLC v. Tracy*, 812 F.3d 249 (2d Cir. 2016), which, following *Cohen*, held that a pre-dispute private agreement to arbitrate before a non-FINRA arbitral forum was enforceable, notwithstanding FINRA's Rule 13200, which provides that disputes arising out of the business activities of a member or its employee *must* be arbitrated under the FINRA Code.

The only authority cited by either side that is directly on point and is not undermined by the Supreme Court's recent decision in *Epic Systems Corp.*, 584 U.S. __, is *Cohen*. Laver argues that *Cohen* was wrongly decided, pointing to four district court cases and one unpublished Ninth

---

[9] Because the *Cohen* panel rejected the argument that enforcement of the contractual class action waiver was "contrary" to Rule 13204, it did not reach the second argument—that Rule 13204 as adopted by FINRA and approved by the Securities and Exchange Commission ("SEC") must be treated as a "contrary congressional command" that overrides the enforceability of the arbitration agreement under the Federal Arbitration Act ("FAA") under *CompuCredit Corp. v. Greenwood*, 132 S.Ct. 665, 669, 181 L.Ed.2d 586 (2012). *Cohen*, 799 F.3d at 178.

Circuit case that have held that FINRA Rule 13204 precluded arbitration of putative class claims. But as CSSU points out, there was no class action waiver in the arbitration agreements in at least four of the cases, so the issue of whether the parties could contract around Rule 13204 pre-dispute was not reached.[10] In the only case on *those* facts, *Zoller v. UBS Securities LLC*, 16 C 11277, 2018 WL 1378340, at *3 (N.D. Ill. Mar. 19, 2018), the court found that "FINRA Rule 13204 is effectively part of the parties' arbitration agreement" and denied motions to compel arbitration of class claims, despite the defendant's argument that its own employment and arbitration agreement contractually waived the plaintiff's ability to assert claims on behalf of a class. However, *that* conclusion rested on the Seventh Circuit's refusal to enforce collective action waivers under *Lewis v. Epic Systems Corp.*, 823 F.3d 1147 (7th Cir. 2016)—the opinion that was reversed by the Supreme Court on May 21, 2017.[11]

Laver also argues that after *Cohen* and *Tracy* were decided, FINRA rejected those Second Circuit opinions in Regulatory Notice 16-25. In that Notice, FINRA expressed its disagreement with federal appellate court decisions like *Tracy* that held that pre-dispute forum selection clauses in agreements between member firms and their customers and employees could require those customers and employees to give up their rights to FINRA arbitration. In Regulatory Notice 16-25, FINRA reiterated its positions that customers and employees of member firms must always be allowed to resort to FINRA-governed arbitrations and that right, codified in FINRA Rule 12200,

---

[10] The four were *Alakozai v. Chase Inv. Services Corp.*, 557 Fed. Appx. 658, 659 (9th Cir. 2014) ("The [employment] agreement contains no waiver of plaintiffs' right to bring class action claims against Chase. It merely provides that class claims cannot be arbitrated by FINRA. Because the district court has not yet addressed class certification in this case, FINRA Rule 13204(d) precludes enforcement of the arbitration agreement at this time."); *Wright v. RBC Capital Markets Corp.*, 2010 WL 2599010 at *8 (E.D. Cal. June 24, 2010) (holding that Rule 13204(d) "applies only to those who have already initiated a class action or who are already members of class actions that have been initiated"); *Zeltser v. Merrill Lynch & Co.*, 2013 WL 4857687 at *3 (S.D.N.Y. Sept. 11, 2013) (refusing to force a class action claim into arbitration in light of FINRA Rule 13204, noting that "[n]either the Supreme Court nor the Second Circuit has held that FINRA is preempted by the FAA in a fact pattern such as the one before me here"); *Gomez v. Brill Securities, Inc.*, 2010 WL 4455827 at *1 (S.D.N.Y. Nov. 2, 2010) (concluding, prior to FINRA Regulatory Notice 12-28, that "collective actions" fell outside of the scope of Rule 13204).

[11] CSSU also notes that the arbitration agreement at issue in each of the five cases relied on by Laver expressly incorporated the FINRA rules, while the EDRP applicable to Laver does not.

13

could not be contracted around or otherwise waived. Regulatory Notice 16-25 at 3-6.

But Regulatory Notice 16-25 does not mention Rule 13204, does not mention *Cohen*, and does not indicate that *all* provisions in the FINRA Code are un-waivable. While the Regulatory Notice explains FINRA's broad position that "FINRA rules are not mere contracts that member firms and associated persons can modify," those pronouncements are grounded in the fundamental point of the Regulatory Notice: "the mandatory nature of the FINRA rules' requirement that FINRA arbitration must be available upon the customer's request, even in the absence of an agreement to arbitrate." *Id*. at 3-4. The same is true for employees; FINRA arbitration must always be an option. *Id*. at 6-7.[12] That is not the issue before me nor was it the issue before the *Cohen* court. Even if binding upon this Court, Regulatory Notice 16-25 does not determine the outcome here nor significantly undermine the persuasiveness of *Cohen* opinion.[13]

Nor does Laver's reliance on a 2012 FINRA response letter (responding to comments about changing the scope of Rule 13204 to include collective actions, as subsequently approved by the SEC) defeat CSSU's motion. Heller Decl., Ex. 4. In that letter, the Assistant Chief Counsel of FINRA Dispute Resolution indicated that "any language in a member firm's employment agreement that requires employees to waive their right to file or participate in a collective action against a member firm in other [non-FINRA] arbitral forums is contrary to the provisions of the Industry Code." *Id*. at 4. However, Laver provides no authority to explain what deference, if any,

---

[12] Laver's reliance on this Regulatory Notice is somewhat ironic, as the Notice highlights FINRA long-standing preference for arbitration and its concern that member firms may be forcing customers and employees to resolve their disputes in court *as opposed* to the more streamlined and less expensive process of arbitration governed by FINRA's code. *Id*. at 4.

[13] As Laver notes, Regulatory Notice 16-25 characterized as dicta a discussion in a FINRA Board of Governors 2014 enforcement action decision. Regulatory Notice 16-25 at fns. 17, 23 (discussing Board of Governor decision in *Dept of Enforcement v. Charles Schwab & Co.*, 2014 FINRA Discipl. LEXIS 5 (April 24, 2014)). The *Cohen* court relied on that now-FINRA-disapproved-of-dicta from the *Schwab* decision suggesting firms could contract around employee rights to a FINRA arbitration (but not consumer rights to FINRA arbitration). However, the fundamental point remains; nothing in Regulatory Notice 16-25 indicates that member firms cannot contract around other, less fundamental provisions of the FINRA Code. Rule 13204 itself provides that its subparagraphs "do not otherwise affect the enforceability of any rights under the Code or any other agreement" indicating that the provisions of this specific rule *are* subject to waiver by private agreement. *See* Rule 13204.

14

I should give to this comment letter. CSSU contends it should be given none. Absent authority, I will follow the only direct authority on point—the *Cohen* decision.[14]

Finally, Laver points out that the 2015 EDRP (but not the 2011 EDRP governing Laver's claims) provided that the class waiver only applies "to the extent permitted by law." That does not provide an independent ground for finding the waiver unenforceable absent binding or persuasive authority demonstrating that it *is* unenforceable. Oppo. to MTD 19.

I will follow *Cohen*. CSSU's motion to dismiss is GRANTED. Laver agreed to mediate and then arbitrate any claims regarding his employment with and compensation from CSSU under the terms of the EDRP. The Southern District of New York, where CSSU's petition to compel arbitration is pending, is better positioned to determine the scope and forum for that arbitration (*e.g.*, whether the EDRP venue provisions or the FINRA venue provisions apply), because those issues will necessarily be directly joined there.

## II. MOTION TO TRANSFER VENUE

Because I GRANT the motion to dismiss, the motion to transfer venue is DENIED as moot.

## CONCLUSION

For the foregoing reasons, CSSU's motion to dismiss is GRANTED and CSSU's motion to transfer is DENIED as moot.

**IT IS SO ORDERED.**

Dated: June 21, 2018

William H. Orrick
United States District Judge

---

[14] CSSU moves to strike Laver's reference to the 2012 opinion letter. Reply on MTD at 19. While not binding on this court, the opinion letter is relevant. The motion to strike is DENIED.

15